Ex Parte Arístides Castro López, peticionario.

Núm. 115.—*Sometido:* Marzo 23, 1939. *Resuelto:* Mayo 11, 1939.

*Santos P. Amadeo,* abogado del peticionario; *R. A. Gómez, Fiscal,* y *Luis Janer, Fiscal Auxiliar,* abogados del Jefe de la Penitenciaría Insular.

El Juez Asociado Señor De Jesús emitió la opinión del tribunal.

La Corte Juvenil de Ponce declaró al menor de diez y seis años Arístides Castro López culpable de un delito de homicidio voluntario y le impuso una condena de cinco años de reclusión en la Penitenciaría Insular de Río Piedras, con la recomendación de "mantener al mencionado menor . . . en un lugar separado de los criminales adultos, en forma tal que resulte imposible que dicho Arístides Castro López, que es un niño menor de edad, se asocie con ellos o que éstos puedan ejercer influencia sobre aquél . . ."

La sentencia se dictó el 25 de noviembre de 1938 y el 18 de marzo pasado el citado menor presentó en este Tribunal una solicitud de hábeas corpus en la que alega que la ameritada sentencia es nula y que en su consecuencia se halla ilegalmente privado de su libertad por las siguientes razones:

"(*a*) Porque dicha sentencia está en violación a las secciones 21, 23, 25 y 33 de la Ley núm. 37 de 1915, que establece un sistema de cortes para niños, etc., conocida por la Ley de Cortes Juveniles de Puerto Rico.

"(*b*) Porque dicha sentencia está en violación de la sabia política pública (*public policy*) que en relación con el tratamiento de delincuentes juveniles estableció la Legislatura de Puerto Rico al aprobar la ley antes mencionada y la cual consiste en no castigar a los delincuentes juveniles como criminales comunes, sino más bien en educarlos y reformarlos para que en el futuro sean buenos ciudadanos.

"(*c*) Porque la Corte Juvenil de Ponce al sentenciar al peticionario, que es un menor, de acuerdo con la Ley de Cortes Juveniles, abusó de su discreción al ejercer el poder de 'parens patriae', porque la reclusión del peticionario en el Presidio Insular está en contra de su bienestar debido a que en dicha institución el peticionario está en contacto directo e indirecto con delincuentes adultos y además se hace imposible su reforma y su educación tal como lo dispone la sección 33 de la Ley de Cortes Juveniles.

"(*d*) Porque de acuerdo con las secciones antes mencionadas y la política pública (*public policy*) establecidas por la Legislatura de Puerto Rico en relación con el tratamiento de delincuentes juveniles, el peticionario debió haber sido recluído en la Escuela Correccional de Mayagüez, para que allí él pudiera corregirse, educarse y reformarse, según fué la intención de los legisladores al establecer la Ley de Cortes Juveniles."

Termina el peticionario suplicando a este tribunal que "de acuerdo con el artículo 483, inciso 5, del Código de Enjuiciamiento Criminal de Puerto Rico, anule la sentencia dictada por la Corte Juvenil de Ponce y en su lugar dicte otra sentencia en el sentido de recluir al peticionario en la Escuela Correccional de Mayagüez, y en caso de que no haya sitio en dicha escuela, lo recluya en la Sala de Niños Delincuentes, adscrita a la Corte Juvenil de Ponce, hasta que su ingreso en la Escuela Correccional sea posible."

Vista la indicada solicitud, debidamente jurada por el peticionario, y los artículos 469 y siguientes del Código de Enjuiciamiento Criminal, el 20 de marzo pasado expedimos un auto de hábeas corpus dirigido a Sixto M. Saldaña, Jefe

de la Penitenciaría Insular, ordenándole comparecer ante este tribunal el 23 del mismo mes, a las dos de la tarde, en su sala de sesiones, trayendo consigo al peticionario, a fin de resolver sobre la legalidad de su prisión.

En la fecha indicada compareció el Jefe de la Penitenciaría Insular de Río Piedras con el peticionario, estando este último asistido de su letrado Lic. Santos P. Amadeo. Del interrogatorio a que el peticionario sometió al Jefe de la Penitenciaría Insular, resulta que no obstante sus buenos deseos, no puede asegurar de manera absoluta que el menor, en un momento dado, no pueda venir en contacto con los confinados adultos, por no existir allí medios adecuados que permitan una separación absoluta mientras asisten a los talleres y a la escuela.

El caso quedó sometido a nuestra consideración con el informe oral del abogado del peticionario y el del Fiscal de este Tribunal, quien se allanó a la expedición del auto.

La norma de interpretación de la "Ley para establecer un sistema de cortes para niños, etc.," aprobada el 11 de marzo de 1915 (Leyes de ese año, pág. 73), nos la da el legislador en la sección 33 de la misma, que literalmente dice así:

"Sección 33.—Esta Ley deberá interpretarse liberalmente con el fin de que se haga posible llevar a cabo sus propósitos, siendo éstos la protección y el bienestar del niño y proporcionarle los medios de corregirse, educarse y vivir como ciudadano respetuoso de la ley."

En el caso de *Clemente* v. *Alvarez, Alcaide, etc.,* y *El Pueblo,* 50 D.P.R. 784, 787, este tribunal, por voz de su Juez Asociado Sr. Travieso, que a la vez es el autor de la citada Ley, hace una clara exposición de los principios fundamentales que la informan. Dijo entonces el tribunal:

"El propósito fundamental del sistema de cortes para delincuentes juveniles es el de tratar y considerar a los menores de diez y seis años no como criminales sino como pupilos del Estado, al que se impone la obligación de reformarlos y educarlos para impedir que continúen por el camino del crimen. Por eso la ley dispone que la

vista del caso se celebrará en privado; que las penas impuestas por las leyes a las personas adultas serán aplicadas discrecionalmente en el caso de jóvenes delincuentes; que las cortes para niños tendrán facultad para dejar sin efecto o suspender la ejecución de las sentencias; y que ninguna orden o sentencia dictada por la corte contra un niño podrá ser admitida como prueba en ningún procedimiento civil o criminal en contra del mismo niño.

"La mayor protección que la ley ofrece al niño delincuente es la contenida en su sección 23, la que dispone 'que ningún menor de 16 años será encarcelado en una cárcel común, en la compañía de criminales adultos confinados en la misma', con el propósito evidente de evitar el daño irreparable que se causaría al menor como resultado de la convivencia y asociación con personas ya avezadas al crimen.

¿Podía el Juez de la Corte Juvenil de Ponce, dentro de las circunstancias de este caso conforme resultan del récord, condenar al peticionario a cumplir cinco años de presidio en la Penitenciaría Insular de Río Piedras, a pesar de la recomendación que contiene la sentencia respecto al aislamiento del niño? Ésa es la cuestión a resolver, a la luz de la letra y del espíritu de la ley especial sobre la materia.

La sección 23 de la ley prohibe terminantemente que un niño menor de diez y seis años de edad sea encarcelado en una cárcel común, en la compañía de criminales adultos, y sólo lo permite, por vía de excepción, *"en el caso de que su encarcelación se hiciese absolutamente necesaria."* Para ese caso excepcional de absoluta necesidad expresamente dispone la ley que la encarcelación se verifique "en un lugar separado de los criminales adultos, *en forma tal que resulte imposible que el niño se asocie con ellos, o que éstos puedan ejercer influencia sobre aquél."*

En la Escuela Correccional, por prescripción de ley, no pueden ser recluídos los que hayan sido convictos de asesinato u homicidio. Excluída la Escuela Correccional, el Juez de la Corte Juvenil de Ponce no tuvo otra alternativa que la de recluir al peticionario en la galera de menores adscrita a la Cárcel de Distrito de Ponce o confinarlo en la

Penitenciaría Insular de Río Piedras. Conociendo, como indudablemente conoce, las condiciones en que se halla la galera de menores, estimó que la Penitenciaría Insular ofrecía mayores ventajas por disponer esta institución de amplios y bien equipados talleres donde el menor podría adquirir un oficio y tener además escuela donde aprender los rudimentos de la instrucción primaria. Optó por esta última institución y ordenó que el menor fuera recluído en ella, no sin antes disponer que se tomasen todas las precauciones necesarias para impedir su contacto con los presos adultos.

Tratándose de que el peticionario es un menor y que por consiguiente pesa sobre nosotros la responsabilidad de *parens patriae,* creímos nuestro deber investigar personalmente y cerciorarnos de la verdadera situación en que el menor se hallaba y de las ventajas que realmente podría ofrecerle la Penitenciaría Insular. Llevando a efecto nuestro propósito, el Juez Sr. Travieso y el que suscribe, con el conocimiento y aquiescencia del tribunal, giramos una visita a la Penitenciaría Insular, pudiendo comprobar que existe allí una galera independiente del resto del edificio, dedicada exclusivamente a presos menores de veintiún años, en número que actualmente excede de ochenta, y que entre éstos hay varios que aun no han llegado a la edad de dieciséis años. Que estos menores asisten diariamente a la escuela durante ciertas horas del día y en otras van a los distintos talleres, y que mientras se hallan en una u otros, como también asisten presos adultos, los menores son encargados al profesor o maestro del taller y a la vez van acompañados de presos de absoluta confianza cuya misión es impedir su contacto con los confinados adultos.

Es de conocimiento general que la Cárcel de Distrito de Ponce, como todas las de la isla, no disfruta de las comodidades, de los talleres y escuelas de que goza la Penitenciaría Insular. En estas condiciones, no abrigamos duda alguna que el Juez de la Corte Juvenil actuó correctamente.

velando por el mayor bienestar del menor, en armonía con los fines y propósitos de la Ley de Cortes Juveniles antes enunciados, y siendo ello así, tenemos que concluir que la prisión del peticionario no es ilegal.

*Procede, por lo expuesto, desestimar la solicitud de hábeas corpus y ordenar que el peticionario permanezca confinado en la Penitenciaría Insular en la forma en que se halla actualmente, hasta que expire su período de reclusión u otra cosa se disponga de acuerdo con la ley.*