LUPERCIO TORRES ROSARIO, peticionario, *v.* SIXTO M. SALDAÑA, JEFE DEL PRESIDIO INSULAR, demandado.

Núm. 401.—*Sometido:* Diciembre 5, 1941. *Resuelto:* Diciembre 23, 1941.

*Santos P. Amadeo y R. V. Pérez Marchand,* abogados del peticionario; *Hon. Procurador General George A. Malcolm, R. A. Gómez, Fiscal del Tribunal Supremo y Luis Negrón Fernández, Fiscal Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

Lupercio Torres se halla recluído en la Penitenciaría Insular extinguiendo una sentencia de un año de presidio impuéstale por la Corte de Distrito de San Juan por un delito de escalamiento en primer grado, cometido, según se alega en la acusación, en uno de los días del mes de octubre de 1941. En la petición de hábeas corpus que ha presentado en este tribunal, alega que nació en el año 1925 y en 9 de abril de 1940 la Corte Juvenil del Distrito Judicial de San Juan lo declaró niño delincuente por un delito de escalamiento y lo puso bajo la custodia del Sr. Esteban Miranda mientras observara buena conducta. Sostiene el peticionario que al ser declarado niño delincuente por la Corte Juvenil quedó

desde ese instante sujeto a la jurisdicción exclusiva de dicha corte hasta llegar a su mayor edad, y que contando diez y seis años de edad todavía, la Corte de Distrito de San Juan carecía y carece de jurisdicción para conocer del supuesto delito, por lo que se halla ilegalmente privado de su libertad.

No existe controversia en cuanto a los hechos alegados por el peticionario. Toda la cuestión se reduce a determinar el alcance de la sección 8 de la Ley núm. 37, aprobada el 11 de marzo de 1915 (pág. 73), creando un sistema de cortes para niños, etc., que en lo pertinente dice:

"Sección 8.—Para los fines de esta Ley, la palabra 'padres' o 'padre' significa uno o ambos como fuere compatible con el propósito de la misma; la palabra 'niños' o 'niño' comprende uno o más, como fuere compatible con el propósito de esta Ley, y comprenderá, a menos que de otro modo se consigne específicamente, cualquier niño en la Isla de Puerto Rico menor de diez y seis años de edad, *o que, una vez sujeto a la jurisdicción de una Corte para Niños por las disposiciones de esta Ley, no haya llegado a la mayor edad.*" (Bastardillas nuestras.)

Para la mejor inteligencia del precepto legal transcrito, parece conveniente, antes de iniciar su estudio y discusión, dar cumplimiento a la regla de oro de hermenéutica legal, cual es, descubrir el propósito perseguido por el legislador. La propia ley, en su sección 33, lo expresa con toda claridad, así:

"Sección 33.—Esta Ley deberá interpretarse liberalmente con el fin de que se haga posible llevar a cabo sus propósitos, siendo éstos la protección y el bienestar del niño y proporcionarle los medios para corregirse, educarse y vivir como ciudadano respetuoso de la ley.

"Los procedimientos y sentencias determinados en esta Ley sólo implicarán el ejercicio de una eminente patria potestad, por parte de El Pueblo de Puerto Rico, con respecto a los niños, contra quienes no establecerá precedente alguno de criminalidad."

La conocida obra "American Jurisprudence", tratando de la naturaleza y propósito de las leyes de esta índole, se expresa en los siguientes términos:

*"Naturaleza y Propósito.*—Los estatutos que crean cortes con jurisdicción sobre delincuentes juveniles, estableciendo el procedimiento que las rige, así como el cuidado y disciplina a que deben someterse tales delincuentes, han sido caracterizados por las cortes como progresivos, humanitarios y benéficos, y se les ha calificado de paternales y benevolentes. Tienen por objeto, no el castigo de infractores juveniles por mala conducta, criminal o de otro género, sino separarlos de la senda de la tentación y conducirlos por el camino del bien y de la rectitud, apelando a medios preventivos a la vez que correctivos. Su propósito es detener la tendencia criminal en su principio y proteger el carácter que aún no se ha formado, cuando es más fácil lograrlo, contra el medio ambiente e influencias impropias, suministrando al débil e irreflexivo una justa oportunidad para desarrollar los elementos de honradez, sobriedad y virtud esenciales para ser un buen ciudadano, y evitar además que puedan luego llevar una vida ociosa, disoluta o inmoral. En otras palabras, el bienestar del niño es el verdadero propósito de estos estatutos. Un estatuto de esta índole no es otra cosa que la aplicación del poder de *parens patriae* que tiene el Estado y de su derecho a ejercitar el adecuado control paternal sobre aquellos ciudadanos menores de edad que están inclinados al mal."

La misma obra, tratando sobre la interpretación que debe darse a estas leyes, dice a continuación:

*"Interpretación.*—Como hemos dicho en otra ocasión, las leyes que crean tribunales con jurisdicción sobre delincuentes juveniles, dictando reglas para el cuidado y disciplina de tales delincuentes, son consideradas por las cortes como progresivas, humanitarias y benéficas, y por consiguiente debe dárseles una interpretación liberal, tratando de que su manifiesto propósito pueda lograrse en la mayor extensión que sea compatible con sus términos." Obra citada, tomo 31, páginas 785 y 786.

Interpretándola a la luz del espíritu liberal y benéfico que la inspira y teniendo en cuenta su propósito de proporcionar al niño "los medios de corregirse, educarse y vivir como ciudadano respetuoso de la ley," fuerza es concluir que la letra y el espíritu de la ley no dejan duda alguna de que la frase "o que, una vez sujeto a la jurisdicción de una corte para niños por las disposiciones de esta Ley, no haya llegado

a la mayor edad," significa que una persona comprendida dentro de esa definición no puede ser juzgada ni sentenciada por una corte de jurisdicción ordinaria como lo es la de distrito de San Juan.

A primera vista parece que esta interpretación crea un discrimen en contra de aquellos menores de veintiún años que no cometieron falta o delito alguno antes de cumplir los diez y seis años. Pero si se tiene en cuenta que ya por razón del medio ambiente en que nacen y se desarrollan, ya por defectos congénitos procedentes de diversas causas, o por otras circunstancias que sería prolijo enumerar, existen niños que desde su más temprana edad demuestran su inclinación al mal, no parece arbitrario ni caprichoso que el legislador haya creído justo y conveniente extender sobre ellos su protección y cuidado hasta su mayor edad, brindándoles así más amplia oportunidad de corregir sus defectos o inclinaciones, oportunidad que no necesitan los que nacen, viven y se desarrollan en condiciones normales. Es verdad que como sostiene el Fiscal, hay casos que resuelven que la corte juvenil sólo conserva su jurisdicción en relación con el caso de que ha conocido cuando el niño no había cumplido los diez y seis años de edad y que cualquier delito cometido después de esa edad debe ser juzgado por los tribunales ordinarios. Véanse a ese efecto los casos de *State ex rel. Corella* v. *Pence,* (1924, Mo.), 262 S. W. 360, y *State* v. *Porterfield,* 264 S. W. 386. En esos casos el estatuto decía lo siguiente:

"Cuando se ha adquirido jurisdicción sobre la persona de un niño bajo las disposiciones de esta Ley, tal jurisdicción continuará, *a los efectos de este artículo,* hasta que el niño haya cumplido su mayor edad."

En 31 American Jurisprudence 799, citado por el Fiscal, se resume la jurisprudencia sobre la materia en los siguientes términos:

"*Jurisdicción continua.*—Por lo general, a virtud de estatutos en los distintos estados, las cortes juveniles tienen jurisdicción continua sobre el niño delincuente. El tiempo durante el cual esta jurisdicción continúa es generalmente durante la menor edad, pero como sostienen los casos, la jurisdicción no cesa con la mera adjudicación de delincuencia y orden de reclusión. El propósito de la disposición estatutaria que preceptúa que cuando la corte juvenil ha adquirido jurisdicción sobre la persona del niño, esa jurisdicción continuará para los efectos de la ley hasta que el niño haya llegado a la mayor edad, se ha dicho que tiene por objeto permitir al Estado, bajo circunstancias adecuadas, hacerse cargo de la custodia de los niños delincuentes para asegurar su educación y medios de corregirse sosteniéndose que esta facultad no depende enteramente de los estatutos, pudiendo trazarse su origen hasta la doctrina de equidad que dispone que 'la equidad actúa sobre la persona,' y al actuar así, no encontramos campo más propicio que la protección de los derechos personales de los niños. Se ha resuelto por un estatuto que prescribe que una vez adquirida jurisdicción sobre un niño bajo las disposiciones de la ley de cortes juveniles, 'tal jurisdicción continuará *a los efectos de este artículo* hasta que el niño haya llegado a su mayor edad', debe interpretarse en el sentido de que cuando la corte juvenil obtiene jurisdicción sobre un delincuente, el retener su jurisdicción hasta que el delincuente llegue a la edad de veintiún años, se circunscribe a los efectos de los procedimientos en que dicha corte adquirió jurisdicción, y no deberá interpretarse en el sentido de excluir la de las cortes ordinarias para procesar al menor después que llegue a la edad de diez y ocho años (en nuestra ley son diez y seis), por delitos cometidos entre sus diez y ocho y veintiún años de edad." (Paréntesis nuestro.)

Nuestro estatuto, como hemos visto, no limita de ese modo la jurisdicción de la corte juvenil, sino que por el contrario sigue considerando al delincuente "como un niño" "para los efectos de esta ley." (Sección 8.)

No teniendo la Corte de Distrito de San Juan jurisdicción para conocer del delito imputado al menor peticionario, la sentencia que dictó dicha corte en 21 de noviembre de 1941, que motiva su reclusión en la Penitenciaría Insular, es nula, y siéndolo, es ilegal la prisión que actualmente sufre,

640

y por consiguiente *procede su excarcelación, debiendo entregarse dicho menor a la Corte Juvenil de San Juan para que proceda con arreglo a derecho.*

El Juez Asociado Sr. Todd, Jr., no intervino.