EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JOSÉ ELIUD ANDÚJAR BATIS, acusado y apelante.

Número 16375.

*Sometido:* 8 de octubre de 1958. *Resuelto:* 10 de diciembre de 1958.

*Marcos A. Ramírez* y *Pablo M. García Rodríguez*, designados abogados de oficio por este Tribunal Supremo, abogados del apelante; *Hon. Secretario de Justicia J. B. Fernández Badillo, Arturo Estrella, Secretario Auxiliar de Justicia*, y *William Fred Santiago* y *Héctor R. Orlandi Gómez, Fiscal Interino* y *Fiscal Auxiliar*, respectivamente, *del Tribunal Supremo*, abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR SALDAÑA emitió la opinión del Tribunal.

Al ocurrir los hechos imputados en la acusación formulada contra el apelante Andújar Batis, o sea, el 10 de septiembre de 1955, éste tenía más de 18 años pero no había alcanzado su mayor edad. Se desprende de los autos que para esa fecha Andújar estaba sujeto a la autoridad de la Sala de Menores del Tribunal Superior. Es decir, le eran aplicables las disposiciones de la Ley núm. 37 de 11 de marzo de 1915, según enmendada. 34 L.P.R.A. secs. 1941–1975.([1]) La nueva ley sobre menores delincuentes—Ley núm. 97 de junio 23 de 1955—empezó a regir 90 días después de su

---

([1]) La sec. 8 de la Ley núm. 37 de marzo 11 de 1915, según enmendada, disponía en lo pertinente: ". . . la palabra 'niños' o 'niño' . . . comprenderá, a menos que de otro modo se consigne específicamente, cualquier niño en la Isla de Puerto Rico menor de diez y seis años de edad, o que, una vez sujeto a la jurisdicción de una Corte para Niños por las disposiciones de esta Ley no haya llegado a la mayor edad."

aprobación, es decir, el 21 de septiembre de 1955. No obstante, fundándose en el art. 3 de la referida Ley núm. 97 de junio 23 de 1955 (34 L.P.R.A. Sup. Acum. 1957, sec. 2004), la Sala de Menores renunció a su poder sobre el menor acusado y ordenó el traslado del caso para que éste fuera procesado como si se tratara de un adulto.([2]) Así surge de los autos y lo admiten tanto el apelado como el apelante. Celebrado el juicio ante el Tribunal Superior, Sala de Ponce, Andújar fue declarado culpable de un delito de escalamiento en primer grado, condenándosele a sufrir la pena de uno a seis años de presidio, con trabajos forzados. Creemos que la sentencia dictada debe revocarse.

En efecto, Andújar no podía ser procesado bajo términos y condiciones más onerosos que los impuestos por la ley vigente a la fecha en que se perpetraron los hechos imputados en la acusación. Se admite que, a tenor con dicha ley, la Sala de Menores no podía renunciar a su poder sobre el menor ni 'dar traslado al caso para que se tramitara como si Andújar fuese un adulto. Y la referida ley también disponía entre otras cosas que: (1) "todas las penas y castigos impuestas por la ley . . . serán aplicadas discrecionalmente por el tribunal y la ejecución de cualquier sentencia podrá dejarse sin efecto o suspenderse por el tribunal y no se permitirá el ingreso de un menor . . . en una cárcel o presidio". (34 L.P.R.A. sec. 1963); (2) "ninguna orden o sentencia dictada por la corte contra un menor . . . podrá ser admitida como medio de prueba en un caso civil o criminal o cualquier otro procedimiento judicial establecido con cualquier fin contra dicho niño, excepto en casos subsiguientes contra el mismo niño en virtud de esta ley". (34 L.P.R.A.

---

34 L.P.R.A sec. 1948. El apelante antes de cumplir diez y seis años de edad había quedado sujeto a la jurisdicción del tribunal de menores y a las disposiciones contenidas en la referida ley sobre niños delincuentes. Véanse *Irizarry* v. *Tribl. de Distrito*, 72 D.P.R. 189 (1951) y *Torres* v. *Saldaña*, 59 D.P.R. 635 (1941).

([2]) Dicho artículo dispone lo siguiente: "El Tribunal conservará su autoridad sobre todo niño sujeto a las disposiciones de esta ley hasta

sec. 1964); y (3) "... los procedimientos y sentencias determinados en esta ley sólo implicarán el ejercicio de una eminente patria potestad, por parte de El Pueblo de Puerto Rico, con respecto a los niños, contra quienes no establecerá precedente alguno de criminalidad." (34 L.P.R.A. sec. 1973.) A estos beneficios y liberalidades no tenían ni tienen derecho hoy día los acusados procesados como adultos. Así por ejemplo: la Sala de Menores hubiese tenido discreción para sentenciar al acusado a una pena menor que el mínimo de un año fijado por el Código Penal para el delito de escalamiento en primer grado. Véase 33 L.P.R.A. sec. 1593. El fiscal acepta estas conclusiones al allanarse a la revocación.

En consecuencia, creemos que lo dispuesto en el citado art. 3 de la Ley núm. 97 de 1955 no es aplicable al caso de Andújar. De lo contrario dicho precepto resultaría *ex post facto*, pues operaría en detrimento del acusado y alteraría perjudicialmente su situación en relación con el alegado delito o sus consecuencias. Art. II, Sec. 12 de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A. tomo I, pág. 190. Véanse *Fernández* v. *Rivera*, 70 D.P.R. 900 (1950); *Emanuelli* v. *Tribunal*, 74 D.P.R. 541 (1953); *Lindsey* v. *Washington*, 301 U. S. 397 (1937); *Thompson* v. *Utah*, 170 U.S. 343 (1898).(³) Un estatuto

---

que cumpla la edad de 21 años a menos que el Tribunal, mediante orden al efecto, renuncie a su poder sobre el menor después de haber cumplido 16 años y antes de que éste cumpla 21 años de edad; disponiéndose sin embargo, que cuando un menor que haya cumplido 18 años de edad y se encuentre bajo la supervisión del Tribunal cometa una nueva infracción de la ley se procesará como adulto."

(³) Véanse además, *Calder* v. *Bull*, 3 Dall. 386, 1 L. ed. 648 (1798); *Kring* v. *Missouri*, 107 U.S. 221 (1883) y *Ex parte Medley*, 134 U.S. 160 (1890). *Cf.* Dowling y Edwards, *American Constitutional Law* (1954) 558–562. Como expresó el Tribunal Supremo de los Estados Unidos en el caso de *Lindsey*, supra, el carácter *ex post facto* de un estatuto penal debe apreciarse considerando la penalidad prescrita, más bien que la sentencia impuesta. La Constitución prohibe aplicar una nueva norma punitiva a un crimen ya consumado en perjuicio del acusado. Por eso, cualquier aumento en la sanción que legalmente pueda imponerse al acusado, resultaría *ex post facto*. A ese respecto no importa cuál fue la sentencia que de hecho impuso el tribunal.

penal no debe interpretarse en forma retroactiva si tal interpretación lo haría inconstitucional bajo la prohibición relativa a leyes *ex post facto*. Véanse Crawford, *The Construction of Statutes* (1940) sec. 281; 2 Sutherland, *Statutes and Statutory Construction* (1943) secs. 2201–2204; 2301–2310. Así pues, resulta obvio que no podía procesarse ni condenarse al acusado *como un adulto*, en violación de los términos y condiciones de la ley sobre menores delincuentes vigente a la fecha en que ocurrió la infracción que se le imputa.

▇▇▇ Por lo dicho procedería, en un caso corriente, revocar la sentencia apelada y ordenar que el caso fuese juzgado nuevamente ante el tribunal de menores. Sin embargo, habiendo permanecido en el presidio durante los últimos dos años y medio, Andújar hoy día ha cumplido los 21 años de edad. Y en un nuevo proceso él tendría derecho a que se le aplicaran todas las disposiciones de la Ley núm. 97 de 1955 *que no le sean desfavorables*, según lo provisto en el art. 15 al efecto de que: "Por la presente se deroga la Ley núm. 37 de 11 de marzo de 1915, según ha sido enmendada, y las disposiciones de esta ley serán aplicables a todos los casos pendientes o en trámite de acuerdo con dicha ley que aquí se deroga y a todos los casos pendientes o en trámite en que esté envuelto un niño." (Leyes, pág. 505.)

Ahora bien, el poder o autoridad del "tribunal" sobre un menor depende de la fecha en que se cometió la falta y no de aquélla en que comenzó el proceso o en que dicha corte adquirió jurisdicción sobre el niño delincuente. Así lo declaró la jurisprudencia interpretativa de la Ley núm. 37 de 1915, según enmendada. Véase *Irizarry* v. *Tribl. de Distrito*, 72 D.P.R. 189, 193–195 (1951). *Cf.* 123 A.L.R. 446–454; 48 A.L.R.2d 663, 695–700; 31 Am. Jur., *Juvenile Courts*, sec. 40; *State ex rel. Heth* v. *Moloney*, 186 N.E. 362 (Ohio, 1933); *Miller* v. *Superintendent of Indiana Boys' School*, 198 N.E. 66 (Ind. 1935); *Ex parte Lewis*, 188 P.2d 367 (Okla. 1947); *The Young Offender: Jurisdiction*, 17

Brooklyn L. Rev. 216, 224–225 (1951). Y la nueva Ley de 1955 adoptó expresamente ese criterio al definir el término "niño" como sigue: ". . . significará una persona menor de 18 años de edad o una persona que habiendo cumplido 18 años de edad sea llamada a responder por la infracción o tentativa de infracción de cualquier ley estatal u ordenanza municipal *cuando en tal infracción o tentativa de infracción incurrió dicha persona antes de haber cumplido 18 años de edad."* (Bastardillas nuestras.)   34 L.P.R.A., Sup. Acum. 1957, sec. 2001.

Como a tenor del articulado de la antigua ley la corte de niños podía imponer una *"sentencia"* o *"condena"* de reclusión por término fijo, nuestra jurisprudencia también había sentado la norma de que se podía procesar a un menor delincuente aún después que éste había llegado a su mayoridad.  *Ex parte Castro,* 54 D.P.R. 772 (1939) e *Irizarry* v. *Tribl. de. Distrito,* 72 D.P.R. 189 (1951).  Pero hoy día la situación es distinta.  En consonancia con el propósito fundamental de rehabilitar y reajustar al menor mediante un tratamiento adecuado, la Sala de menores sólo puede dictar *"órdenes"* sobre la custodia, detención y prestación de servicios médicos, siquiátricos o sicológicos al niño.[4] Además, el período de detención o custodia siempre es de carácter *indeterminado:* es decir, hasta que el menor cumpla los 21 años de edad.  Por supuesto, en cualquier momento dentro de ese período, el tribunal puede modificar su resolución para colocar al niño ". . . en libertad a prueba en

---

[4] Como expresó nuestra Asamblea Legislativa en la exposición de motivos de la Ley núm. 97 de 1955, el problema de los niños desajustados o abandonados es básicamente uno de profilaxis social, pero siempre es necesario un mecanismo legal que habilite a la autoridad judicial para entender en asuntos relacionados con el cuidado y tratamiento de dichos niños.  Sobre los problemas jurídicos y sociales que plantea la llamada delincuencia juvenil, véanse Tappan, *Juvenile Delinquency* (1949); Glueck, *Unraveling Juvenile Delinquency* (1950); Glueck, *Delinquency in the Making: Paths to Prevention* (1952); Cohen (ed.), *Youth and Crime* (1957); Virtue, *Basic Structure for Children's Services* (1953); Cahn, *A Court for Children* (1953); Grunhut, *Juvenile Offenders Before the Courts* (1956); Bell (ed.), *Guides for Juvenile Court Judges* (1957).

el hogar de sus padres o en el de otra persona adecuada bajo la custodia o supervisión de aquéllos o de ésta." 34 L.P.R.A., Sup. Acum. 1957, sec. 2010.

De ordinario el tribunal dispone de un período de tres años por lo menos para el tratamiento de rehabilitación y reajuste. A menudo dicho período resulta mayor. Pero no hay duda de que la autoridad del tribunal sobre el niño cesa cuando éste cumple 21 años de edad. O sea que, de conformidad con la ley vigente, el menor puede ser detenido bajo la custodia del Secretario de Salud o de una institución privada hasta que quede rehabilitado o reajustado, pero nunca más allá del momento en que llegue a los 21 años. Esto se infiere, en primer lugar, de la cuidadosa enumeración que hace el art. 10 de la ley al proveer qué órdenes puede dictar la Sala de menores en los asuntos relacionados con niños.[5]  En segundo lugar, la ley vigente establece

---

[5] "Si el Juez determina que la situación o conducta del niño lo coloca bajo las disposiciones del Artículo 2 de esta ley podrá dictar una orden:

"1. Disponiendo que el niño sea sometido a un examen para fines de diagnóstico solamente por un médico, psiquiatra o psicólogo y a esos efectos podrá recluirlo en un hospital o institución adecuada; disponiéndose que para la más pronta prestación de los servicios médicos, psiquiátricos o psicológicos al menor, según lo antes provisto, podrá utilizar los servicios de cualquier médico, psiquiatra, o psicólogo legalmente autorizado a ejercer su profesión en Puerto Rico y a disponer el pago de sus honorarios de acuerdo con las normas establecidas por la Oficina Administrativa de los Tribunales; y disponiéndose además, que en los casos previstos en los apartados 1, 4 y 5 de este Artículo, el Tribunal podrá, previa investigación de la condición económica del padre, de la madre o de la persona encargada del menor imponerle la obligación de contribuir con una cantidad razonable al pago total o parcial de los gastos en que se incurra en el tratamiento del menor, y el incumplimiento injustificado de la disposición del Tribunal a este respecto, por parte de la persona obligada, constituirá desacato; o

"2. Desestimando la solicitud de ingreso en una institución; o

"3. Colocando al niño en libertad a prueba en el hogar de sus padres o en el de otra persona adecuada bajo la custodia o supervisión de aquéllos o de ésta; o

"4. Colocando al niño bajo la custodia del Secretario de Salud para que éste lo ingrese en una institución adecuada para el tratamiento de niños o lo encomiende a un hogar de crianza; o

"5. Colocando al niño bajo la custodia de una organización o institución privada adecuada." 34 L.P.R.A., Sup. Acum., sec. 2010.

claramente que: "el Tribunal conservará su autoridad sobre todo niño sujeto a las disposiciones de esta ley *hasta que cumpla la edad de 21 años. . . . .*" (Bastardillas nuestras.) 34 L.P.R.A., Sup. Acum. 1957, sec. 2003. Y la norma a que se adhieren generalmente los estatutos sobre delincuencia juvenil, en cuanto al término o período de la detención, es que el menor "delincuente" debe ser colocado bajo custodia adecuada mientras necesite tratamiento para su rehabilitación o reajuste *durante su menor edad.* La detención siempre termina por ministerio de ley cuando el menor llega a los 21 años. *Ex parte Naccarat,* 41 N.W.2d 176 (Mo. 1931), Nota en 76 A.L.R. 657–666; *The Young Offender: Jurisdiction,* 17 Brooklyn L. Rev. 216, 224–225 (1951); 31 Am. Jur., *Juvenile Courts,* secs. 47–49; Rubin, *Protecting the Child in the Juvenile Court,* 43 J. Crim. L., C. & P. S. 425, 437–439 (1952); Sharp, *Jails or Detention Homes for Children?* en *Youth & Crime* (Cohen, ed.) (1957) 182–189; Rubin, *Crime and Juvenile Delinquency* (1958) 109.[6]

Así pues, bajo la ley vigente, el tribunal de menores no tiene poder o autoridad para procesar a Andújar después que éste llegó a su mayor edad. Y sin duda la detención o custodia de cualquier "niño", en virtud de una orden del tribunal de menores, cesa por ministerio de ley a los 21 años. Quizá sería conveniente que se hiciera una revisión de nuestra legislación para determinar: (1) qué medidas deben tomarse cuando un niño comete una falta grave pero el tribunal de menores no adquiere jurisdicción sobre él antes de llegar a su "mayor edad" (es decir, a los 21 años); y (2) si en casos de niños que adolecen de enfermedades men-

---

[6] El Standard Juvenile Court Act, publicado por la National Probation and Parol Association en 1949, dispone en su sec. 9 que el poder sobre el menor termina cuando éste llega a los 21 años. Véase Sussmann, *Law of Juvenile Delinquency* (1950), App. II, 80–94. Aparentemente nuestra Legislatura al adoptar la Ley núm. 97 de 1955 tomó como modelo el referido Standard Juvenile Court Act. Véanse además, MacCormick, *Existing Provisions for the Correction of Youthful Offenders,* 9 Law & Contemp. Prob. 588 (1942); Mimms, *Indeterminate Control of Offenders Under the Youth Correction Authority Act: Constitutional Issues,* 9 ibid. 635–649 (1942).

tales debe prolongarse la detención hasta que puedan ser restituídos a la vida normal sin peligro. Así, por ejemplo, en Connecticut el estatuto dispone que: "La detención por orden del tribunal juvenil será por un período indeterminado pero terminará cuando el niño llegue a la edad de 21 años, excepto en los casos de anormales mentales o de delincuentes anormales". (Gen. Stat. of Conn., Rev. 1949, sec. 2814). Véase Rubin, *Crime and Juvenile Delinquency* (1958) 69–72, 89–113.[7]

*Debe revocarse la sentencia apelada y devolverse el caso al tribunal de instancia con instrucciones de que se archive la causa.*

El Juez Presidente Sr. Negrón Fernández disintió.

El Juez Asociado Sr. Serrano Geyls no intervino.

---

[7] Respecto al problema de la demencia en criminales adultos, véanse *Pueblo* v. *Alsina,* 79 D.P.R. 46, 63–64 (1956); Weihofen, *Mental Disorder as a Criminal Defense* (1954) 365–375. Compárese además: Guttmacher and Weihofen, *Psychiatry and the Law* (1952); Neustatter, *Psychological Disorder and Crime* (1953); Winfield, *Mental Abnormality and Crime* (1949); Zilboorg, *The Psychology of the Criminal Act and Punishment* (1954); Hoch and Zubin (eds.), *Psychiatry and the Law* (1955); Weihofen, *The Urge to Punish* (1956).